UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOWMEDICA OSTEONICS CORP., <br><br> Plaintiff, <br><br> v. <br><br> BRETT HOWARD and COREY PETULLA, <br><br> Defendants. | Civil Action No. <br><br> 19-19254 (SDW) (LDW) <br><br> **REPORT AND RECOMMENDATION** |

**LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court is defendants' Motion to Dismiss Pursuant to Rule 12(b)(3) or, Alternatively, to Transfer Venue. (ECF Nos. 16, 21). Plaintiff opposes the motion. (ECF No. 19). The Honorable Susan D. Wigenton, U.S.D.J., referred the motion to the undersigned for a Report and Recommendation. The Court heard oral argument on the motion on January 14, 2020. Having considered the parties' written submissions and argument, and for good cause shown, the Court recommends that the Motion to Dismiss or Transfer Venue be **DENIED**.

## I.   BACKGROUND

Plaintiff Howmedica Osteonics Corp. ("Howmedica"), a subsidiary of Stryker Corp. ("Stryker"), designs, manufactures, and sells spinal implants and instruments used in spinal surgery. (Compl. ¶¶ 1, 13). It sells these products via a network of sales representatives and associate sales representatives who cultivate relationships with spine surgeons, showcase Howmedica's products to those surgeons, and then provide technical support and training to surgeons who decide to use Howmedica's products in their surgeries. (*Id.* ¶¶ 16-18). Defendant Brett Howard ("Howard") was employed as a sales representative for Howmedica in Los Angeles,

California from May 2, 2016 until his resignation on October 7, 2019. (*Id.* ¶ 27). Defendant Cory Petulla ("Petulla") worked as a team member and later an associate sales representative for Howmedica in Los Angeles, California from March 5, 2016 until his resignation on October 2, 2019. (*Id.* ¶ 26). Howmedica is a New Jersey corporation with its principal place of business in Mahwah, New Jersey. (*Id.* ¶ 6). Howard and Petulla reside in California. (*Id.* ¶¶ 7-8).

In connection with their employment at Howmedica, Howard and Petulla each executed "Confidentiality, Intellectual Property, Non-Competition and Non-Solicitation" agreements in which they agreed, among other things, not to solicit Howmedica customers or work for a competitor of Howmedica for a specified time period following the termination of their employment. (*Id.* ¶¶ 38, 41). Shortly after resigning from Howmedica, Howard and Petulla allegedly began working for a direct competitor, Alphatec Spine, Inc., and soliciting Howmedica clients in violation of the restrictive covenants in their employment agreements. (*Id.* ¶¶ 47, 49, 52, 54, 65, 72, 74).

Relevant to the instant motion, Howard and Petulla's Confidentiality, Intellectual Property, Non-Competition and Non-Solicitation agreements each contained the following forum selection clause:

> 8.2    **Governing Law and Venue**. Although I may work for Stryker in various locations, I agree and consent that this Agreement shall be interpreted and enforced as a contract of [New Jersey] as of my date of termination and shall be interpreted and enforced in accordance with the internal laws of that state without regard to its conflict of laws rules. In such circumstances, I agree and consent that any and all litigation between Stryker and me relating to this Agreement will take place exclusively in [New Jersey], and I consent to the jurisdiction of the federal and/or state courts in [New Jersey]. I consent to personal jurisdiction and venue in both such Courts and to service of process by United States Mail or express courier service in any such action.

(*Id.*, Exs. A, B). Despite having consented to venue in the District of New Jersey, and despite the fact that plaintiff filed suit in the agreed-upon forum, defendants now move to dismiss for improper

2

venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure or, in the alternative, to transfer venue to the Central District of California – where state law governing restrictive covenants in employment contracts may be more favorable to their position – pursuant to either 28 U.S.C. § 1404 or 28 U.S.C. § 1406.

## II. DISCUSSION

### A. Enforceability of the Forum Selection Clause

The logical starting point for the Court's analysis is a determination of the enforceability of the forum selection clause, as that provision factors into the Court's consideration of defendants' venue and transfer motions. It is well-established that "[f]ederal law controls the question of whether to enforce a forum selection clause." *In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018). Under federal law, "a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983), *overruled on other grounds by Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495 (1989); *see Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564-65 (D.N.J. 2000).

While defendants contend that they did not have legal counsel when they signed their employment contracts and did not have the opportunity to negotiate the provisions set forth therein, they do not go so far as to claim that plaintiff secured their agreement to the forum selection provision by fraud or overreaching. Indeed, "[f]orum selection clauses are routinely upheld, even in situations involving adhesion contracts, unequal bargaining power, and the absence of

negotiations over the clause." *Heartland Payment Sys., Inc. v. Steves*, Civ. A. No. 15-3544, 2015 WL 7737344, at *3 (D.N.J. Dec. 1, 2015). Nor do defendants argue that enforcement of the forum selection clause would violate any particular New Jersey public policy or that litigating in this District would be so seriously inconvenient as to effectively deny them their day in court.[1]

Instead, defendants argue that the forum selection clause is invalid under California law. Section 925(a)(1) of California's Labor Code prohibits employers from "requir[ing] an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would . . . [r]equire the employee to adjudicate outside of California a claim arising in California." Defendants correctly point out that courts applying California law have invalidated forum selection clauses under § 925. *See, e.g., Lyon v. Neustar, Inc.*, No. 2:19-cv-371, 2019 WL 1978802, at *8 (E.D. Cal. May 3, 2019). But defendants provide no legal authority for a federal court sitting in New Jersey, considering a contract which, by its terms, is to be interpreted in accordance with the laws of New Jersey, to consider California law when determining the enforceability of a "presumptively valid" forum selection clause. *Cf. Am. Fin. Resources, Inc. v. Money Source, Inc.*, Civ. A. No. 14-1651, 2014 WL 1705617, at *7 (D.N.J. Apr. 29, 2014)

---

[1] *DePuy Synthes Sales Inc. v. Stryker Corp.*, on which defendants rely, is not to the contrary. In that case, a former Stryker employee brought a declaratory judgment action in the Central District of California seeking to invalidate restrictive covenants in his employment contract under California Labor Code § 925. *DePuy Synthes Sales Inc. v. Stryker Corp.*, Case No. ED CV 18-1557, 2019 WL 1601384, at *1 (C.D. Cal. Feb. 5, 2019). The employment contract at issue in *DePuy Synthes* included a forum selection clause identical to the one at issue here. *Id.* at *2. In determining the enforceability of the forum selection clause, the *DePuy Synthes* Court, like this Court, applied federal law to determine whether the forum selection clause was the product of fraud, is unreasonable, or if "'enforcement would contravene a strong public policy in the forum in which suit is brought.'" *Id.* (quoting *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 457 (9th Cir. 2007)). The court found that in enacting section 925 of its Labor Code, California expressed a strong public policy against enforcing forum selection clauses that would require labor disputes arising in California to be litigated in another state. *Id.* at *3. Thus, based on the *forum state's* public policy, the *DePuy Synthes* Court declined to enforce the forum selection clause.

4

(applying federal law, not California law, to determine enforceability of forum selection clause). Federal law and the public policy of the forum state counsel in favor of enforcing the forum selection clause here.[2]

## B.   Improper Venue Motions Considered in Light of the Forum Selection Clause

The Court must now determine how defendants' consent to venue in the forum selection clause impacts their motions to dismiss or transfer due to improper venue. In evaluating a motion to dismiss pursuant to Rule 12(b)(3), the Court accepts the allegations in the complaint as true, unless they are contradicted by defendants' sworn statements. *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012). Defendants bear the burden of showing that venue is improper. *Id.* at 160.

Rule 12(b)(3) authorizes dismissal of an action only when it was filed in an "improper" venue. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). Similarly, the Court may transfer an action pursuant to 28 U.S.C. § 1406(a) only when venue is "wrong." To determine whether venue is "improper" or "wrong," courts generally look to the federal venue statue, which provides that a "civil action may be brought in: (1) a judicial district

---

[2] It bears noting that "interpretation of a forum selection clause is an analytically distinct concept from the enforceability of that clause." *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017). Whereas the enforceability of a forum selection clause is determined by federal law, "state contract law, rather than federal common law, governs the interpretation of the forum selection clause[]." *Id.* at 184. Importantly, no questions as to interpretation of the forum selection clause have been presented to the Court; for example, there is no dispute that the forum selection clause is mandatory or that plaintiff's claims fall within its scope. And, even if defendants' arguments could be construed as relating to the proper interpretation of the forum selection clause, California law likely would be irrelevant to the Court's analysis as the parties agreed that the contract should be interpreted in accordance with the laws of New Jersey. *See id.* at 183-84 (federal court sitting in New Jersey looks to "New Jersey choice-of-law rules to determine what state's substantive contract law governs the interpretation of the Agreements' forum selection clauses" and "New Jersey choice-of-law rules provide that ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice" (quotation and alternation omitted)).

in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Here, the factors set forth in § 1391, standing alone, point to California as the statutorily "proper" venue for this action, as both defendants reside in California and worked for Howmedica, and later Alphatec, in California. However, the defendants each entered into contracts with mandatory forum selection clauses, in which they consented to venue "exclusively" in New Jersey for "any and all litigation" relating to the terms of employment as set forth in their Howmedica employment agreements.

Defendants now ask the Court to ignore the otherwise enforceable forum selection clause and dismiss this action as impermissibly filed in an improper venue. In support of their position, defendants rely on the Supreme Court's opinion in *Atlantic Marine Construction Company v. U.S. District Court for the Western District of Texas*. In *Atlantic Marine*, the parties entered into a construction contract with a valid and enforceable forum selection clause specifying that all disputes would be litigated in the courts of Norfolk, Virginia. 571 U.S. 49, 53 (2013). When a payment dispute arose, however, plaintiff filed suit in the Western District of Texas. *Id.* Although venue was otherwise proper in the Western District of Texas under 28 U.S.C. § 1391(b)(2), defendants moved to dismiss the case under Rule 12(b)(3) and 28 U.S.C. § 1406(a), arguing that the parties' consent to litigate in Virginia in the forum selection clause rendered venue in Texas "improper." *Id.* at 54 n.1. The question before the Court, therefore, was "the procedure that is available for a defendant in a civil case who seeks to enforce a forum-selection clause." *Id.* at 52. The Court ultimately determined that a forum selection clause may be enforced through a motion

to transfer venue under 28 U.S.C. § 1404(a), and not through a motion to dismiss for improper venue under Rule 12(b)(3) and 28 U.S.C. § 1406(a). *Id.* at 59. Although the Court remanded the case to the district court for an analysis under § 1404(a), importantly, the Court strongly suggested that the lower court should enforce the forum selection clause and transfer the case to Virginia. *Id.* at 67-68.

In support of its holding, the Supreme Court explained: "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a). Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." *Id.* at 56. Defendants argue that this language announces a new rule of venue whereby the Court must conduct an independent venue analysis under § 1391(b), irrespective of the terms of a forum selection clause, and dismiss or transfer the case if venue does not lie under the federal venue statute. Because the statutory venue factors do not support venue in this District, defendants argue, the Court should not consider the parties' consent to litigate here and must dismiss or transfer the case.

The Court acknowledges that the above-quoted language from *Atlantic Marine* has caused divergence in the caselaw, and some courts, including courts from this District, have adopted defendants' position. *See, e.g., Howmedica Osteonics Corp. v. DJO Global, Inc.*, Civ. A. No. 16-2330, 2017 WL 1136671, at *2-3 (D.N.J. Mar. 27, 2017) (transferring action pursuant to 28 U.S.C. § 1406(a) for improper venue despite New Jersey forum selection clause identical to the one at issue here); *ED-GEL, LLC v. Wells Pharmacy Network, LLC*, Civ. A No. 12-7292, 2013 WL 12152483, at *4 (D.N.J. Dec. 17, 2013) (same). *But see Howmedica Osteonics Corp. v. Jarrell*,

7

Civ. A. No. 15-1179, 2015 WL 13727906, at *3 (D.N.J. Nov. 13, 2015) (holding that "a valid forum selection clause in which the parties agreed to litigate their claims in the *current* forum obviates the need for a determination of whether venue would be independently appropriate in that forum under 28 U.S.C. § 1391"); *Am. Fin. Resources*, 2014 WL 1705617, at *7 (rejecting improper venue challenge in light of New Jersey forum selection clause in employment contract). In this Court's view, however, only by divorcing the above-quoted language in *Atlantic Marine* from its context and established legal precedent can it stand for the proposition defendants champion.[3]

First, the Court declines to adopt an interpretation of *Atlantic Marine* that would abrogate the widely accepted principle that objections to venue are waivable and "parties can agree to venue among themselves, as they have here." *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 87 (3d Cir. 2006); *see, e.g.*, *Actega Kelstar, Inc. v. Musselwhite*, Civ. A. No. 09-1255, 2009 WL 1794793, at *3 (D.N.J. June 22, 2009) ("Like personal jurisdiction, an objection to venue may be waived." (alteration and quotation omitted)); *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 320 (D.N.J. 1998) ( "Defendant . . . waived any opposition to improper venue when it agreed to the forum selection clause in the Master Equipment Lease . . . ."). Indeed, *Atlantic Marine* itself recognizes that a court may transfer an action pursuant to § 1404(a) "to any other district to which the parties have agreed by contract or stipulation," without reference to the propriety of the new venue under § 1391(b). 571 U.S. at 59. Under defendants' reading of *Atlantic Marine*, "a forum-selection clause would never be valid unless, by chance, the venue specified in

---

[3] Indeed, the *Atlantic Marine* Court confronted a factual scenario that is the polar opposite of the one at issue here. In *Atlantic Marine*, the plaintiff filed suit in a court where venue was otherwise proper, in violation of the terms of the parties' contractual agreement, and defendants sought to enforce the forum selection clause. Here, plaintiff filed suit in a court where venue would not otherwise lie in accordance with the forum selection clause, but defendants ask the Court to disregard their consent to proceed here and transfer the case to their preferred forum.

8

the clause happened to satisfy § 1391(b), in which case the forum-selection clause would have been completely unnecessary," *MB Fin., Inc. v. Hart*, Case No. 17 C 8866, 2018 WL 3920715, at *3 (N.D. Ill. Aug. 16, 2018), a position this Court finds untenable, particularly in light of the Supreme Court's admonishment that "'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).

Defendants would have the Court adopt a rule whereby a Court sitting in a statutorily proper venue can consider a valid forum selection clause in its venue and transfer analysis, but a Court sitting in a statutorily improper venue – by the parties' consent – cannot. Put another way, under defendants' interpretation of *Atlantic Marine*, only a court having statutorily proper venue could enforce an otherwise enforceable forum selection clause. The Court does not read *Atlantic Marine* to require or allow such bifurcation of the powers and duties of the federal district courts.

Thus, the Court respectfully declines to follow *DJO Global*, and instead adopts the line of well-reasoned decisions recognizing that "[w]here a defendant has waived its objection to venue, the Court may hear the matter, even though venue would not otherwise be proper under section 1391." *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 375 (D.N.J. 2000). *See Howmedica Osteonics Corp. v. Jarrell*, 2015 WL 13727906, at *3 (recommending denial of motion to dismiss or transfer pursuant to Rule 12(b)(3) and § 1406(a) where defendant consented to venue in New Jersey forum selection clause in contract with same plaintiff as in this case); *see also MB Fin., Inc*, 2018 WL 3920715, at *4 (interpreting *Atlantic Marine* to hold that "venue is proper in a preselected forum regardless of § 1391(b), and transfer should be premised on § 1404(a), not § 1406(a) or Rule 12(b)(3)"); *Huawei Techs. Co., Ltd. v. Yiren Huang*, Civ. A. No. 4:17-CV-893, 2018 WL 1964180, at *9 (E.D. Tex. Apr. 25, 2018) ("[B]ecause the Court found a

valid and enforceable forum-selection clause, selecting the Eastern District of Texas as the agreed to forum and venue for disputes arising out of Huang's Employment Agreement, the Court finds that dismissal based on improper venue [is] inappropriate" under *Atlantic Marine*); *Nymbus, Inc. v. Sharp*, No. 3:17-cv-1113, 2018 WL 705003, at *6 (D. Conn. Feb. 5, 2018) ("*Atlantic Marine* and the statutory venue factors are inapplicable in light of . . . defendant's venue waiver. To conclude otherwise would severely undermine the clearly articulated policy of the Supreme Court favoring enforcement of forum selection classes in all but the most unusual cases." (quotation, citations, and alteration omitted)); *BMO Harris Bank, N.A. v. McM, Inc.*, Civ. No. 17-335, 2017 WL 3443238, at *3 (D. Minn. Aug. 8, 2017).

Consequently, the Court recommends that defendants' motion to dismiss or transfer under Rule 12(b)(3) and § 1406(a), which is premised on the notion that the District of New Jersey is an improper venue under § 1391(b), be denied because defendants explicitly waived their venue objections in the forum selection clause.

### C. Discretionary Transfer under 28 U.S.C. § 1404(a)

In the alternative, defendants request that the Court exercise its discretion to transfer this action to the Central District of California under 28 U.S.C. § 1404(a). The Court may effect a venue transfer under § 1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where [the case] might have been brought or to any district or division to which all parties have consented." Generally, courts consider a host of public and private interest factors when considering transfer under § 1404(a). *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (enumerating factors). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart*, 487 U.S.

at 31). Therefore, the Court "should not consider arguments about the parties' private interests" but instead "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. "As a consequence, a district court may consider arguments about public-interest factors only . . . the practical result [of which] is that forum-selection clauses should control except in unusual cases." *Id.*

The Court has recommended that the New Jersey forum selection clause be enforced. Thus, it proceeds to analyze the public interest factors only to determine whether they overcome the "strong presumption in favor of enforcing forum-selection clauses." *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 403 (3d Cir. 2017). Relevant public interest factors include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879-80 (citations omitted).

Nearly all of the public interest factors are neutral. First, any judgment would be equally enforceable by the District of New Jersey or the Central District of California. Second, defendants point to no practical considerations of efficiency or cost savings that favor either forum; the location of evidence and convenience of witnesses are private interest factors the Court does not consider here. *In re: Howmedica*, 867 F.3d at 406. Third, while the Court acknowledges that judicial vacancies in this District have affected the pace of civil litigation overall, this action nevertheless has proceeded in an expedited manner and there is no argument that any party's interests have been impaired or even delayed as a result of court congestion. Fourth, the two courts have an equal interest in deciding this controversy at home as the parties are citizens of New Jersey

11

and California. *Id.* at 410 ("To the extent the 'local interest in deciding local controversies at home' weighs against retaining in New Jersey any claims about the Sales Representatives, who all live in California and worked for Howmedica in California, California's interest is offset by New Jersey's countervailing interest in deciding claims concerning the employment agreements at issue, which Howmedica, a New Jersey corporation, prepared and executed in New Jersey." (citation omitted)). Fifth, this Court is confident that both it and the Central District of California could ably apply whatever state law is applicable to plaintiff's claims. *See Atl. Marine*, 571 U.S. at 67 ("[F]ederal judges routinely apply the law of a State other than the State in which they sit."). Finally, while California recently has expressed a public policy against enforcing forum selection clauses in employment contracts, this consideration is simply not so "overwhelming[]" as to tip the balance of public interest factors in favor of transfer, nor does it give rise to such "extraordinary circumstances" as to justify transfer away from the parties' contractually agreed-upon forum. *Id.* at 62, 67. Thus, the Court recommends that defendants' motion to transfer under § 1404(a) be denied.

### III. CONCLUSION

For the foregoing reasons, the Court recommends that defendants' Motion to Dismiss or Transfer Venue be **DENIED**. The parties are hereby advised that, pursuant to Fed. R. Civ. P. 72(b)(2), they have 14 days after being served with a copy of this Report and Recommendation to serve and file specific written objections to the Honorable Susan D. Wigenton, U.S.D.J.

Dated: January 17, 2020

*/s/ Leda D. Wettre*
Hon. Leda Dunn Wettre
United States Magistrate Judge